REQUESTED BY: Walter D. Weaver, Director of Insurance, Lincoln, Nebraska.
1. Does the Property and Liability Insurance Guaranty Association have authority to borrow money for the purpose of immediately paying claims arising under an insolvent insurance company?
2. Neb.Rev.Stat. § 44-2407 (Reissue 1978) contemplates a maximum assessment of one percent of the net direct written premiums. If the initial assessment of such maximum does not produce a sum sufficient to pay all claims, may the association impose another assessment in the subsequent calendar year but less than twelve months after the first assessment?
1. Yes.
2. Yes.
Section 44-2407(2)(c), Neb.Rev.Stat. (Reissue 1978), provides that the association may borrow funds necessary to effect the purposes of the Guaranty Association Act in accord with the plan of operation adopted under said act.
The plan of operation submitted by you provides as follows:
 Article 2.B. A majority of the Board shall constitute a quorum . . . except that an affirmative vote of five (5) Board members is required to:
. . . .
3. borrow money.
 Article 3.C. The Board may borrow money from any person or organization, including a member insurer, or from an appointed Servicing Facility as the Board may deem appropriate.
From the foregoing it is clear, in our opinion, that the board of directors has the authority to borrow money for the purposes of the act, including immediately paying claims.
Insofar as assessment of members is concerned, Neb.Rev.Stat. § 44-2407 (Reissue 1978), provides that except for assessments for administrative costs, no member insurer may be assessed `in any year on any account an amount greater than one percent of that member insurer's net direct written premiums for the preceding calendar year on the kinds of insurance in the account.' This section goes on to provide that the association may defer in whole or in part the assessment of any member if the assessment would cause a member insurer's financial statement to reflect amounts of capital or surplus less than the minimum required for a certificate of authority by any jurisdiction in which the member is authorized to transact business.
The plan of operation provides in Article 3.F. that the board shall review and approve by majority vote claim settlements of $10,000 or more. Subsection 6. thereunder provides what assessment, if any, should be levied or whether any refund should be made. It is a fair reading of such provision that the board shall make this determination. Said subsection 6. further provides that if an assessment or refund is determined to be necessary, the board shall levy such assessment in accordance with the provisions of the act.
There is nothing in the plan of operation to indicate whether or not an additional assessment may be made in a succeeding calendar year but less than twelve months following the first. However, we note that the portion of the statute quoted above relating to assessments uses the words `calendar year' when referring to the direct written premiums upon which the one percent is based but does not use the word `calendar' in the earlier reference. For example, if an assessment is made now, the direct written premiums for the preceding calendar year would be for the year 1979. If another assessment were made in the early part of 1981, the direct written premiums would be for the preceding calendar year, or 1980.
Obviously the assessment for a twelve month period, in the example, could exceed the one percent of the direct written premiums for the preceding calendar year of the second assessment. However, since the formula used is based upon one percent of such premiums in a `calendar' year, it appears to us more logical to read the words `any year' as referring to a calendar year also rather than a twelve month period encompassing parts of two calendar years. This interpretation balances the year of the assessment with the calendar year upon which it is based.
This interpretation is supported by Neb.Rev.Stat. 49-801
(Reissue 1978), which provides in part:
 Unless the context is shown to intend otherwise, words and phrases in the statutes of Nebraska hereafter enacted are used in the following sense.
. . . .
(24) Year means calendar year.
See also, Words and Phrases, Vol. 46, `Year' and cases there cited.
It is therefore our opinion that if the maximum assessment of one percent of the net direct written premiums for 1979 is not sufficient to pay all claims that the association may make another assessment in the early party of 1981 with a maximum of one percent of the net direct written premiums for the year 1980.